UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CLIFFORD LEON HOUSTON, | ) | |
| | ) | Case Nos. 3:13-cr-10; 3:17-cv-538 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner Clifford Leon Houston's motion to vacate, set aside or correct his sentence filed pursuant to 28 U.S.C. § 2255. (Doc. 1 in Case No. 3:17-cv-538; Doc. 380 in Case No. 3:13-cr-10.) Also before the Court are Petitioner's motions to hold his § 2255 motion in abeyance (Docs. 8, 13 in Case No. 3:17-cv-538) and his motion for discovery (Doc. 15 in Case No. 3:17-cv-538). The filings and record in this case conclusively establish that Petitioner is not entitled to relief under § 2255, and, therefore, no evidentiary hearing is necessary. For the following reasons, Petitioner's § 2255 will be **DENIED**.

I.  **BACKGROUND**

On November 19, 2013, a jury convicted Petitioner of transmitting in interstate commerce a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). (Doc. 265 in Case No. 3:13-cr-10.) Petitioner appealed his conviction, and the United States Court of Appeals for the Sixth Circuit reversed and remanded for retrial based on an intervening Supreme Court decision, *Elonis v United States*, 135 S. Ct. 2001 (2015). (Doc. 320 in Case No. 3:13-cr-10.) At Petitioner's retrial, the Government presented substantially identical proof, including

that, during a recorded phone call from jail to his girlfriend in February 2013, Petitioner repeatedly threatened to kill his former attorney, James F. Logan. *United States v. Houston*, 683 F. App'x 434, 435–36 (6th Cir. 2017). Specifically, Petitioner stated, among other things, "I'll kill that motherf[* * *]er . . . The only damn thing he's going to get from me is a f[* * *]ing bullet!" *Id*. At retrial, another jury convicted Petitioner of violating 18 U.S.C. § 875(c). (Doc. 352 in Case No. 3:13-cr-10.) The Court subsequently sentenced Petitioner to time served and two years' supervised release. (Doc. 363 in Case No. 3:13-cr-10.) The Sixth Circuit affirmed Petitioner's conviction, and the Supreme Court denied certiorari. (Doc. 379 in Case No. 3:13-cr-10.)

Petitioner timely filed his § 2255 motion on December 18, 2017, asserting that he received ineffective assistance of counsel. (Doc. 1 in Case No. 3:17-cv-538; Doc. 380 in Case no. 3:13-cr-10.) After filing his § 2255 motion, Petitioner filed a motion to recuse Assistant United States Attorney David Jennings from further participating in his case. (Docs. 381, 382 in Case No. 3:13-cr-10; Docs. 3, 5 in Case No. 3:17-cv-538.) Petitioner also filed motions for then-presiding Chief United States District Court Judge Pamela Reeves to recuse herself from the case. (Doc. 381 in Case No. 3:13-cr-10; Doc. 5 in Case No. 3:17-cv-538.) Petitioner even sought a writ of mandamus from Sixth Circuit compelling recusal of Chief Judge Reeves. (Doc. 383 in Case No. 3:13-cr-10.) On February 20, 2020, Chief Judge Reeves denied Petitioner's motions seeking her recusal and disqualification of AUSA Jennings. (Doc. 386 in Case No. 3:13-cr-10; Doc. 7 in Case No. 3:17-cv-538.) On March 9, 2020, Petitioner requested that the Court hold his § 2255 motion in abeyance until the Sixth Circuit ruled on his writ of mandamus petition. (Doc. 8 in Case No. 3:17-cv-538.) On April 20, 2020, the Sixth Circuit denied

Petitioner's request for a writ of mandamus.[1]  (Doc. 388 in Case No. 3:13-cr-10; Doc. 12 in Case No. 3:17-cv-538.)  On April 2, 2020, the Government responded to Petitioner's § 2255 motion.  (Doc. 11 in Case No. 3:17-cv-538.)  Petitioner then filed a second motion to hold his § 2255 motion in abeyance, stating that he intended to seek en banc rehearing from a full panel of the Sixth Circuit on its denial of his writ of mandamus petition.  (Doc. 13 in Case No. 3:17-cv-538.)  Petitioner also filed a motion for discovery.  (Doc. 15 in Case No. 3:17-cv-538.)  On July 22, 2020, this case was reassigned to the undersigned.[2]  (Doc. 16 in Case No. 3:17-cv-538.)  Petitioner's § 2255 motion is now ripe for the Court's review.

## II.  STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate:  "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid."  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Additionally, in ruling on a motion made pursuant to § 2255, the Court must determine whether an evidentiary hearing is necessary.  "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief."  *Martin v. United States*,

---

[1] Accordingly, Petitioner's motion to hold in abeyance (Doc. 8 in Case No. 3:17-cv-538) is **DENIED AS MOOT**.

[2] Based on the reassignment, Petitioner's second motion to hold his § 2255 motion in abeyance (Doc. 13 in Case No. 3:17-cv-538) is **DENIED AS MOOT**.

889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). "The burden for establishing entitlement to an evidentiary hearing is relatively light, and where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin*, 889 F.3d at 832 (citations and internal quotations omitted). While a petitioner's "mere assertion of innocence" does not entitle him to an evidentiary hearing, the district court cannot forego an evidentiary hearing unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*. When petitioner's factual narrative of the events is not contradicted by the record and not inherently incredible and the government offers nothing more than contrary representations, the petitioner is entitled to an evidentiary hearing. *Id*.

### III. ANALYSIS

#### A. Section 2255 Motion

In his § 2255 motion, Petitioner asserts that he is entitled to relief because he received ineffective assistance of counsel. (Doc. 1 in Case No. 3:17-cv-538.) Specifically, Petitioner asserts that his counsel was ineffective because he failed: (1) to pursue a "psychiatric defense" or to request a psychological evaluation; (2) to investigate facts necessary to seek AUSA Jennings's recusal; (3) to file an interlocutory appeal seeking AUSA Jennings's recusal; and (4) to argue that United States Attorney Bill Killian and AUSA Jennings engaged in prosecutorial misconduct based on vindictive prosecution. (Doc. 1 at 10–15 in Case No. 3:13-cr-10.)

To collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460

4

Case 3:17-cv-00538-TRM-SKL   Document 20   Filed 08/04/20   Page 4 of 14   PageID #: 162

(6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, the court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

The record shows that there was no fundamental defect in Petitioner's proceedings that would entitle him to relief.

### i. *Counsel's Failure to Seek a Psychological Evaluation*

Petitioner first asserts that he received ineffective assistance of counsel because he may suffer from Post-Traumatic Stress Disorder ("PTSD") and his counsel failed to retain an expert to conduct a professional assessment and failed to pursue an affirmative "psychiatric defense." (Doc. 1, at 10–11 in Case No. 3:17-cv-538.) Petitioner does not, however, argue that he was either incompetent to stand trial or that he was legally insane at the time of the offense[3]; rather, he argues that an expert may have been able to testify that his PTSD made him more susceptible

---

[3] *See* 18 U.S.C. § 17 (stating standards for demonstrating insanity as an affirmative defense); 18 U.S.C. § 4241 (stating standards for determining whether a defendant is competent to stand trial).

"to make angry and threatening phone calls." (*Id*. at 10.) Such propensity evidence, even if admissible, would likely have only made the case stronger against Petitioner. Even ignoring that, Petitioner has failed to demonstrate that his counsel's conduct fell below an objective standard of reasonableness or that he was prejudiced by his counsel's failure to seek a psychological evaluation regarding his purported PTSD. First, in his motion, Petitioner simply suggests that he "could be" suffering from PTSD as a result of having to provide care to his terminally ill father. (Doc. 1, at 10 in Case No. 3:17-cv-538.) Petitioner's motion does not, however, reference any evidence suggesting that he does, in fact, suffer from PTSD or that his offense was, in fact, triggered by PTSD.[4] *See Swiger v. United States*, No. 17-5384, 2017 WL 8776680, at *2 (6th Cir. Nov. 8, 2017) (affirming denial, without a hearing, of § 2255 motion arguing ineffective assistance of counsel based on failure to investigate whether his offense was triggered by his PTSD because Petitioner "offered no evidence to show that his offense was, in fact, triggered by PTSD"); *see also Swiger v. United States*, Nos. 2:13-cr-102, 2:15-cv-155, 2017 WL 437265, at *8 (E.D. Tenn. Feb. 1, 2017) (denying § 2255 motion, without a hearing, finding that the petitioner's ineffective-assistance-of-counsel claim based on failure to investigate whether his offense was triggered by his PTSD too conclusory). In simple terms, Petitioner fails to demonstrate that his counsel missed an opportunity to rely on PTSD at trial, because the record does not suggest that he actually ever suffered from PTSD.

Moreover, Petitioner has not demonstrated that the outcome of his trial would have been different, because, as the Sixth Circuit explained in affirming Petitioner's conviction, "ample evidence supports the finding that [Petitioner's] words were a serious expression of his intent to

---

[4] Petitioner's motion references an affidavit "Pertaining to Petitioner's Psychological State" (*see* Doc. 1, at 10 in Case No. 3:17-cv-538), but his § 2255 motion does not attach an affidavit.

physically harm Logan in order to stop him from exercising control over various pieces of land."

*Houston*, 683 F. App'x at 438. The Sixth Circuit went on to explain:

> The record makes clear that Houston told his girlfriend that he wanted Logan dead. Specifically, he made the following statements about his intentions towards Logan over the phone: "I'll kill that motherf[* * *]er." "The only thing [Logan]'s gonna get from me is a f[* * *]ing bullet." "When I get out ... he's dead!" "[A]ny of my people has got my permission to kill that son of a b[* * *]!" All the while, he assured his girlfriend of his seriousness of purpose, saying, "I ain't akidding! They can record it!" Further, Houston's tone during the call reflects an intense and visceral anger toward Logan that a reasonable jury could interpret as indicating that Houston sincerely intended to kill Logan.
>
> That evidence was supplemented by the testimony of a prison guard who stated that, the day before the recorded phone call, he overheard Houston, alone in his jail cell, say, "When me and my brother get out, we're going to go to that law firm and kill every last one of them." The guard further testified that Houston made this and similar statements in a tone conveying "absolute rage." A reasonable jury could take this as further evidence that Houston was serious when he made threats in his phone conversation with Honeycutt the following day.
>
> . . .
>
> Houston stated that he wanted to kill Logan as soon as he got out of jail and that he did not care who heard him saying so, knowing full well that his call was being recorded. He instructed his girlfriend to tell his family members to shoot Logan on sight if Logan appeared on the property. Houston also told his girlfriend that he wanted the recording of their call played in court, and that she should get his dispute with Logan "in the news" in order to deter prospective buyers with knowledge that they would have "a damn problem" with Houston once he was released.

*Id*. at 438–39. Given the evidence presented at trial, Petitioner cannot demonstrate that he suffered prejudice as a result of counsel's purported failure to seek a psychological evaluation or present a defense that included a possible PTSD diagnosis. Even if an expert had testified that Petitioner had PTSD and that his PTSD made him more susceptible to becoming angry and making threatening phone calls, his recorded statements provided more than sufficient evidence from which a reasonable jury could have concluded that his statements evinced a serious intent to inflict bodily harm on Logan. *See United States v. Roberson*, 374 F. App'x 728, 729–30 (9th

7

Case 3:17-cv-00538-TRM-SKL   Document 20   Filed 08/04/20   Page 7 of 14   PageID #: 165

Cir. 2010) (holding that an evidentiary hearing was unnecessary to resolve a petitioner's § 2255 motion because there was no reasonable probability that trial counsel's failure to call an expert witness regarding the link between petitioner's PTSD and the charged crimes would have affected the verdict given the "very strong evidence" of the petitioner's "consciousness that he was lying to his victims"). Petitioner has, therefore, failed to demonstrate that there is a reasonable probability that, but for counsel's purported unprofessional errors, he would have been acquitted at trial. *See id*.

Accordingly, the Court will **DENY** Petitioner's motion to the extent he argues that he received ineffective assistance of counsel based on counsel's failure to present evidence regarding his alleged PTSD as an affirmative defense at trial.

### ii. *Counsel's Failure to Investigate Facts Necessary to Seek Recusal of AUSA Jennings and Failure to Seek Interlocutory Review of the Court's Order Denying Petitioner's Motion for Recusal of AUSA Jennings*

Petitioner next argues that he received ineffective assistance of counsel because his trial counsel failed to investigate facts necessary to support a motion seeking recusal of AUSA Jennings and because his counsel failed to move for interlocutory review of the Court's denial of his motion to recuse. (Doc. 1, at 12–13 in Case No. 3:17-cv-538.)

On October 4, 2015, Petitioner's counsel filed a motion to recuse AUSA Jennings, arguing AUSA Jennings violated certain American Bar Association ethical standards because he is "obsessed with Mr. Houston's guilt in the shooting of an officer and his armed ride along . . . despite his having been tried twice in that case and being acquitted." (Docs. 334 in Case No. 3:13-cr-10.) Although Petitioner contends that his counsel's motion was "bare-bones" (Doc. 1, at 12 in Case No. 3:17-cv-538), Petitioner does not describe what more his counsel should have done. The Court denied Petitioner's motion seeking AUSA Jennings's recusal in a well-reasoned memorandum and order after hearing additional in-person arguments from counsel

(Doc. 341 in Case No. 3:13-cr-10), and Petitioner's § 2255 motion suggests nothing more that his counsel should have discovered and does not explain how such discovery would have changed the results of the underlying proceeding. Petitioner presents no reason to believe that the result would have been different at trial if AUSA Jennings had not been involved. As a result, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced as a result.

Similarly, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness by failing to move for interlocutory review of the Court's denial of his motion to recuse or that he suffered prejudice as a result. *See United States v. Martirossian*, 917 F.3d 883, 886–87 (6th Cir. 2019) (noting limited exceptions to the general rule that, under 28 U.S.C. § 1291, courts of appeals are only authorized to review "final decisions" of district courts, which in the criminal context, "generally means a defendant may lodge an appeal only after the court imposes a conviction and sentence.") Accordingly, the Court will **DENY** Petitioner's § 2255 motion to the extent he argues that his counsel was deficient because he failed to investigate facts necessary to support a motion seeking recusal of AUSA Jennings and because he failed to move for interlocutory review of the Court's denial of his motion to recuse.

### iii. *Counsel's Failure to Argue Prosecutorial Misconduct*

Finally, Petitioner argues that he received ineffective assistance of counsel because his attorney did not move to dismiss the charges against him for prosecutorial misconduct based on vindictive prosecution. (Doc. 1, at 14–15 in Case No. 3:17-cv-538.) Specifically, Petitioner contends that the Government only prosecuted him after he exercised his First Amendment rights by posting billboards on his property accusing judges and public officials, including then United

9

States Attorney William Killian, of treason and other crimes and displaying photographs of law enforcement officers killed during a shoot-out on his property in 2006.

To establish vindictive prosecution, a defendant must show: (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and (4) the prosecutor's intent to punish the defendant for exercise of the protected right.[5] *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).

In this case, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness by failing to move to dismiss the charges against him based on prosecutorial misconduct and vindictive prosecution. Petitioner has not identified any evidence suggesting that his prosecution was unreasonable or that it was intended to punish him for exercising his First Amendment rights. According to Petitioner, he posted the billboards criticizing certain Government officials, including then United States Attorney William Killian, on his property sometime in 2011. (Doc. 1, at 2 in Case No. 3:17-cv-538.) The Government did not file a criminal complaint and seek an indictment charging Petitioner with possessing firearms while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) until January 2013 (Doc. 1 in Case No. 3:13-cr-10), after agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives, encountered Petitioner while waiting for warrants to be issued to search Petitioner's brother's residence.

> At about this time, [Petitioner] Leon Houston, riding a four-wheeler at a very fast pace, came across the pasture between his trailer and Rocky Houston's house, armed with two rifles and a handgun, all of which were loaded. When Leon

---

[5] A defendant can also demonstrate "actual vindictiveness" with "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *United States v. McCreary-Redd*, 407 F. App'x 861, 868 (6th Cir. 2010). The Sixth Circuit, however, has described meeting this standard as "exceedingly difficult." *Id*. In this case, there is no objective evidence suggesting that the prosecutor acted to punish Petitioner for exercising his First Amendment rights.

> Houston saw many law enforcement agents with firearms aimed at him, he
> stopped his approach and was subdued by agents. Thereafter, Leon Houston had
> his Miranda rights explained to him, after which he agreed to talk with the agents.
> During the lengthy interview, Leon Houston said that he had "been getting high,"
> and "getting drunk." When asked if he was talking about marijuana when he said
> "getting high," he made a reference to some "wacky tobacco." When asked if he
> smoked regular tobacco or used tobacco products, Leon Houston said that he did
> not. In addition, agents found in his trailer marijuana-smoking paraphernalia and
> marijuana residue. Also, there was a heavy odor indicating recent marijuana use
> within the trailer.

(*Id*.) The Government then superseded its indictment on May 7, 2013, to include a charge for making a threat in interstate commerce based on Petitioner's recorded phone call while in custody to his girlfriend on February 10, 2013, in which he threatened to kill his former attorney. (Doc. 92 in Case No. 3:13-cr-10.)

Even though Petitioner engaged in activity protected by the First Amendment beginning in 2011, and even assuming that then United States Attorney William Killian had a prosecutorial stake in removal of the billboards, Petitioner makes no factual allegations that would support finding that the Government's decision to prosecute him in 2013 was either unreasonable under the circumstances or that it did so to punish him for putting up the billboards in 2011. First, over a year passed between when Petitioner posted the billboards on his property and when law enforcement arrested him. Second, Petitioner was initially charged only after ATF agents encountered Petitioner driving a four-wheeler in their direction at a "fast pace" armed with two rifles and a handgun while waiting for search warrants to search Petitioner's brother's residence. After being Mirandized, Petitioner stated he had been "getting high," and agents found marijuana-smoking paraphernalia and marijuana residue in Petitioner's trailer. (Doc. 1 in Case No. 3:13-cr-10.) The undisputed facts establish that the initial charges were reasonable and not in retaliation for posting the billboards on his property. Petitioner's acquittal on the charge of possessing firearms while being an unlawful user of a controlled substance does not render the

11
Case 3:17-cv-00538-TRM-SKL Document 20 Filed 08/04/20 Page 11 of 14 PageID #: 169

prosecution unreasonable or suggest that it was pursued as punishment for exercising his First Amendment rights. Petitioner's theory, if given purchase, would allow any criminal unfettered immunity from prosecution, as long as he has the foresight to precede an indictment with protected speech against the prosecutor. *See United States v. Goodwin*, 457 U.S. 368, 382 (1982) (noting that "a prosecutor should remain free before trial to exercise broad discretion entrusted to him to determine the extent of the societal interest in prosecution"); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (explaining that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"). Given the undisputed facts leading to Petitioner's arrest and the lack of credible allegations suggesting unreasonable conduct by the prosecutor, the record establishes that his counsel's decision not to pursue a theory of prosecutorial misconduct was objectively reasonable. And, in any event, absolutely nothing suggests that the Court would have dismissed the charges against Petitioner had counsel made such an argument.

Similarly, Petitioner has failed to show it was unreasonable for the prosecutor to supersede his indictment and charge him with making a threat in interstate commerce after he threatened to kill his former attorney in a recorded call to his girlfriend while in custody. In that phone call, Petitioner stated: (1) "I'll kill that motherf[* * *]er"; (2) "The only thing [Logan]'s gonna get from me is a f[* * *]ing bullet."; (3) "When I get out ... he's dead!"; (4) "[A]ny of my people has got my permission to kill that son of a b[* * * *]!"; and (5) "I ain't kidding! They can record it!" *Houston*, 683 F. App'x at 435–36. Given these threats, it was certainly reasonable for the prosecutor to charge Petitioner with making threats in interstate commerce in violation of 18 U.S.C. § 875(c). *See McCreary-Redd*, 407 F. App'x at 869 (holding that a prosecutor's

12

Case 3:17-cv-00538-TRM-SKL   Document 20   Filed 08/04/20   Page 12 of 14   PageID #: 170

conduct was reasonable when he sought add charges in a superseding indictment after remand from the court of appeals based on "previously unavailable information"). Further, there is nothing in the record to suggest that the prosecutor's decision supersede Petitioner's indictment was intended to punish him for posting the billboards in 2011, especially considering that Petitioner was already in custody on other charges. To the contrary, the record overwhelmingly establishes that the superseding indictment for the threat in interstate commerce was, unremarkably, the result of Petitioner's threat against Logan. As a result, again, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness by failing to seek dismissal of the charges against him based on prosecutorial misconduct or that the Court would have dismissed the charges against him based on prosecutorial misconduct had counsel made such an argument.[6]

### B. Motion for Discovery

Petitioner has also filed a motion for discovery, seeking to conduct discovery based on allegations that, in a 1993 federal civil rights trial, Chief Judge Pamela L. Reeves (then a practicing attorney) manufactured and entered into evidence "a large fresh green bag of marijuana," thereby engaging in a criminal conspiracy that somehow led to the deaths of two law

---

[6] To the extent Petitioner claims that he is entitled to relief under § 2255 based on his arguments regarding prosecutorial misconduct independent of his ineffective assistance of counsel claims, that argument also fails because his prosecutorial misconduct arguments are procedurally defaulted. Petitioner did not challenge his conviction or sentence based on alleged prosecutorial misconduct on direct appeal. As a result, to obtain review of his conviction based on prosecutorial misconduct in connection with a § 2255 motion, Petitioner must demonstrate good cause for not raising this argument on direct appeal and that actual prejudice will result if not reviewed. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner has made no such showing, and, thus, his challenges to his conviction based on prosecutorial misconduct independent of his ineffective assistance of counsel arguments are procedurally defaulted. *See id.* at 885–86.

enforcement officers on Petitioner's property. (*See* Doc. 15 in Case No. 3:17-cv-538.) Rule 6 of the Rules Governing Section 2255 Proceedings contemplates discovery for "good cause" but only applies to cases in which a defendant has alleged a specific, nonfrivolous claim. *See Cornell v. United States*, 472 F. App'x 352, 354 (6th Cir. 2012). As discussed herein, Petitioner's § 2255 motion fails to allege nonfrivolous claims. Accordingly, the Court will **DENY** Petitioner's motion for discovery. (Doc. 15 in Case No. 3:17-cv-538.)

## IV. CONCLUSION

For the reasons stated herein, Petitioner § 2255 motion (Doc. 1 in Case No. 3:17-cv-538; Doc. 380 in Case no. 3:13-cr-10) is **DENIED**, and his motion for discovery (Doc. 15 in Case No. 3:17-cv-538) is **DENIED**. Petitioner's motions to hold in abeyance (Docs. 8, 13 in Case No. 3:17-cv-538) are also **DENIED AS MOOT**. Should Petitioner give timely notice of an appeal from this Order, such notice will be treated as an application for a certificate of appealability, which is hereby **DENIED** since he has failed to make a substantial showing of the denial of a constitutional right or "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court [is] correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**